1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DEBORAH E. EDWARDS,<br><br>              Plaintiff,<br><br>v.<br><br>COMMISSIONER  OF  SOCIAL<br>SECURITY,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 14-CV-0585-WQH (WVG)<br><br>**REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[DOC. NOS. 14, 16] |

## I. **BACKGROUND**

On March 13, 2014, Plaintiff Deborah E. Edwards (hereafter "Plaintiff"), filed a Complaint against the Commissioner of the Social Security Administration ("SSA"), Carolyn W. Colvin (hereafter "Defendant"), appealing the decision of an Administrative Law Judge ("ALJ") of the San Diego Office of Disability Adjudication and Review ("ODAR"), denying her disability insurance benefits. (Doc. No. 1.)

On June 30, 2014, Defendant filed an Answer to Plaintiff's Complaint. (Doc. No. 9.) On November 17, 2014, Plaintiff filed a Motion for Summary Judgment. (Doc. No. 14.) On December 11, 2014, Defendant filed a Cross-Motion for Summary Judgment and an Opposition to Plaintiff's Motion for Summary Judgment. (Doc. No. 16.)

14CV0585

1   The Court, having reviewed Plaintiff's Complaint, Defendant's Answer,
2   Plaintiff's Motion for Summary Judgment, Defendant's Cross-Motion for Summary
3   Judgment, Defendant's Opposition to Plaintiff's Motion for Summary Judgment, and
4   the Administrative Record filed by Defendant, hereby finds that Plaintiff is not entitled
5   to the relief requested and therefore RECOMMENDS that Plaintiff's Motion for
6   Summary Judgment be DENIED, and Defendant's Cross-Motion for Summary
7   Judgment be GRANTED.

8   **II. SUMMARY OF APPLICABLE LAW**

9   The Social Security Act, 42 U.S.C. § 401, et seq. ("the Act"), under which the
10   Social Security Administration ("SSA") provides benefits to certain disabled
11   individuals, creates a system by which the SSA determines who is entitled to benefits,
12   and by which unsuccessful claimants may seek review of adverse determinations.
13   Defendant, as Commissioner of the SSA, is statutorily responsible for the administra-
14   tion of the Act.

15   **A. SSA's FIVE-STEP SEQUENTIAL PROCESS**

16   Defendant administers several types of benefits under the Act, including
17   benefits based on disability. The SSA utilizes a five-step sequential evaluation codified
18   by SSA 20 C.F.R. § § 416.920, 404.1520, to determine whether a claimant is eligible
19   for benefits.  To qualify for disability benefits under the Act, a claimant must show that
20   he or she suffers from a medically determinable impairment that can be expected to
21   result in death, or that has lasted or can be expected to last for a continuous period of
22   twelve months or more, and the impairment renders the claimant incapable of
23   performing the work that he or she previously performed, or any other substantially
24   gainful employment that exists in the national economy.  See 42 U.S.C. § §
25   423(d)(1)(A), (2)(A); 1382(c)(3)(A).  A claimant must meet both requirements to
26   qualify as "disabled" under the Act. Id.  The claimant bears the burden of proving that
27   he or she was either permanently disabled or subject to a condition which became so
28

14CV0585

severe as to create a disability prior to the date upon which his or her disability insured status expired. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

Step one in the five-step sequential evaluation process determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § § 404.1520(a)(4)(I). If he is, disability benefits are denied. 20 C.F.R. § § 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the "severity regulation," which provides in relevant part:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. §§ 404.1520(c), 416.920(c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Such abilities and aptitudes include, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "[c]apacities for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" [u]se of judgment;" "[r]esponding appropriately to supervision, co-workers, and usual work situations;" and "[d]ealing with changes in a routine work setting." Id. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to step three, which determines whether the impairment is equivalent to one of a number of listed impairments that the SSA acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

Prior to step four, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  20 C.F.R § 404.1520(e).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  See 20 C.F.R. § 404.1520.  To determine the claimant's RFC, the ALJ must assess relevant medical and other evidence and consider all of the claimant's impairments, including impairments that are not severe.  20 C.F.R. § 404.1520(e), § 404.1545(a)(3).

If the claimant's impairment discussed in step three is not one that is conclusively presumed to be disabling, the evaluation proceeds to step four, where the ALJ determines whether the claimant has the RFC to perform the requirements of his past relevant work.  20 C.F.R. § 404.1520(f).  The term "past relevant work" means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last fifteen years, or fifteen years prior to the date that disability must be established.  In addition, the work must have been substantial gainful activity and have lasted long enough for the claimant to learn to do the job.  20 C.F.R. § § 404.1560(b), 404.1565.  If the claimant has the RFC to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work, or does not have any past relevant work, the analysis proceeds to the fifth and final step.

At step five of the sequential evaluation process, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  If the claimant is able to do other work, he is not disabled.  20 C.F.R. § 404.1520(g).  If the claimant is not able to do other work and meets the duration requirement, he is disabled. 20 C.F.R. § 404.1520(g).  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence  shifts to the SSA.  In order to support a finding that an individual is not disabled at this step, the SSA is

14CV0585

responsible for providing evidence to demonstrate that other work exists in significant numbers in the national economy that the claimant can perform, given his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1512(f); 404.1560(c).

## B. <u>SSA HEARINGS AND APPEALS PROCESS</u>

Under direct delegation from Defendant, the Office of Disability Adjudication and Review ("ODAR") administers a nationwide hearings and appeals program.  SSA regulations provide a four-step process for administrative review of a claimant's application for Federal Disability Insurance Benefits ("DIB") and SSI payments.  <u>See generally</u> 20 C.F.R. § § 404.900, <u>et seq.</u>, 416.1400, <u>et seq.</u>  A decision is made at the initial, reconsideration, ALJ, and Appeals Council levels. <u>Id.</u> If the claimant is not satisfied with the decision at any step of the process, he or she has sixty days to seek administrative review.  <u>See</u> 20 C.F.R. 404.907, 404.929, 404.933, 416.1407, 416.1429, 416.1433.  If the claimant does not request review, the decision becomes binding.  <u>See</u> 20 C.F.R. § § 404.905, 416.1405.

Applications for disability benefits are initially processed through a network of SSA field offices and state disability determination services.  The process begins by a claimant completing an application and an adult disability report, and submitting the documents to one of SSA's field offices.  If the claim is denied, the claimant is entitled to a hearing before an ALJ in SSA's ODAR, where the ALJ will review the claim.  20 C.F.R. § 404.929.  The SSA employs ALJs to adjudicate claims under the Act for claimants who are not satisfied with the administrative determination of their case and have requested an administrative hearing. 20 C.F.R. § § 404.933, 416.1429.  Hearings before ALJs are informal and non-adversarial proceedings.  20 C.F.R. § 404.900(b).  The claimant may have an attorney or non-attorney act as his or her representative at the hearing, or the claimant has the option of representing himself or herself.  20 C.F.R. § 404.900(b).  If the claimant receives an unfavorable decision by an ALJ, he or she may seek review by the Appeals Council.

14CV0585

The Appeals Council, also part of ODAR, acts on claimant requests for review of unfavorable decisions issued by ALJs. The Appeals Council will either grant, deny, or dismiss a claimant's request. If a claimant disagrees with the decision of the Appeals Council, or the Appeals Council declines to review the claim, the claimant may seek judicial review in a federal district court pursuant to 42 U.S.C. Section 405(g), Section 1383(c); See 20 C.F.R. § § 404.981, 416.1481. The Appeals Council also has the power to review an ALJ's decision *sua sponte* within sixty days of the decision. 20 C.F.R. § 416.1481. If a federal district court remands the claim, it will be sent to the Appeals Council, and remanded with instructions to an ALJ for further review.

## III. PROCEDURAL HISTORY

On December 22, 2010, Plaintiff filed an application for disability insurance benefits pursuant to the Act (Administrative Record (AR) 161-167). In her application, Plaintiff alleged that she became disabled on June 30, 2009 (AR 161). On April 13, 2011, the agency denied Plaintiff's initial application (AR 94-98), and on June 30, 2011, the application was denied on reconsideration (AR 100-103). On September 7, 2011, Plaintiff requested a hearing before an ALJ[1] (AR 104).

On April 4, 2012, Plaintiff retained Mr. Anthony J. DeLellis as counsel (AR 128). On October 11, 2012, Plaintiff appeared at a hearing before ALJ Robert Iafe in San Diego (AR 20). Plaintiff testified at the hearing, as did vocational expert, Ms. Connie Guillory, and medical expert, Dr. Arthur Brovender. Id.

On November 9, 2012, the ALJ issued a decision, finding that Plaintiff was not disabled at any time between the alleged disability onset date and the date last insured[2] (AR 20-31). The ALJ determined that, through the date last insured, Plaintiff

---

[1] Defendant notes in its Answer that while Plaintiff's request for a hearing appears to be late, the agency granted her hearing request. (Doc. No. 9 at 2.)

[2] For the purpose of the ALJ's determination, the date last insured was the date of the ALJ's decision, November 9, 2012. However, Plaintiff's earning record shows that Plaintff had acquired sufficient quarters of coverage to

(continued...)

14CV0585

had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R 404.1567(b), with the following limitations: could lift and carry 20 pounds occasionally and 10 pounds frequently; could sit for six hours in an eight-hour day; could occasionally balance, stoop, kneel, and crouch; could frequently climb ramps and stairs; never crawl and never climb ladders, ropes, or scaffolds; could occasionally reach overhead with the right arm; could occasionally perform handling and fingering bilaterally; and could understand, remember, and perform simple instructions. Although the Plaintiff was unable to perform any past relevant work, the ALJ found that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy (AR 24-31).

On December 21, 2012, Plaintiff filed a request for review of the ALJ's decision (AR 14-16). On January 16, 2014, the Appeals Council denied review of the ALJ's decision (AR 1-6). On March 13, 2014, Plaintiff commenced the instant action for judicial review pursuant to 42 U.S.C. Section 405(g). (Doc. No. 1.) On June 30, 2014, Defendant filed an Answer to Plaintiff's Complaint. (Doc. No. 9.) On September 30, 2014, the parties filed a Joint Motion to Extend the Briefing Schedule and the Court granted the parties' Motion on October 6, 2014. (Doc. No. 13.)

On November 17, 2014, Plaintiff filed a Motion for Summary Judgment, alleging that the ALJ committed reversible error in failing to properly consider her testimony. (Doc. No. 14.) On December 11, 2014, in response to Plaintiff's MSJ, Defendant filed a Cross-Motion for Summary Judgment and an Opposition to Plaintiff's MSJ. (Doc. No. 16.) Defendant claims that the ALJ's decision is supported by substantial evidence and Plaintiff is not entitled to disability benefits. (Doc. No. 16 at 24.)

---

[2]/(...continued)
remain insured through December 31, 2014. Here, the acquired coverage through December 31, 2014, did not affect the ALJ's determination.

14CV0585

## IV. STATEMENT OF FACTS

### A. GENERAL BACKGROUND AND MEDICAL HISTORY

Plaintiff, born on June 21, 1961, was employed as a massage therapist with the Atlas Hotel (AR 458; see also AR 571). Plaintiff claims she developed pain in her shoulder after moving a massage table at work on January 2, 2008 [3/] (AR 47, 571). When Plaintiff was leaving work that day, she went to put a bag on her right shoulder and stated, "it felt like my shoulder gave" (AR 571). The following day, Plaintiff claims she could not raise her right upper extremity without it being excruciatingly painful. Id. She called out of work that morning, but ended up returning to work about five days later. Upon returning to work, she continued with her usual and customary duties. Id. Although she returned to work, she was still having progressive pain in her shoulder and was referred to Dr. Bailey. Id.

When Dr. Bailey saw Plaintiff in March 2008, he told her she had tendinitis in her shoulder and indicated that she was fine to return to work (AR 571; 603). However, Plaintiff did not return to work at that time (AR 603). Dr. Bailey prescribed physical therapy at a rate of two or three days per week for three or four weeks, and Plaintiff stated she felt the therapy helped with the pain level (AR 571). Dr. Bailey continued his diagnosis of tendinitis and after two months he sent Plaintiff for an MRI of her right shoulder. Id. The study showed mild supraspinatus tendinosis and an anterior labral tear with inflammatory changes (AR 604). Dr. Bailey recommended Plaintiff see an orthopedic surgeon (AR 571).

When Plaintiff contacted Leslie Shaw for legal counsel, Ms. Shaw referred Plaintiff to orthopedic surgeon, Dr. Richard Greenfield, for a consultation. Id. Dr. Greenfield reviewed the previous MRI, performed x-rays, and told Plaintiff there was

---

[3/] The record shows a discrepancy as to the date of the incident. Dr. McClurg's medical examination and the ALJ Hearing transcript state that the incident occurred on January 2, 2008, but Dr. Hall's medical evaluation report states that January 3, 2008 was the date of the incident. This discrepancy has no bearing on this Court's recommendation.

14CV0585

an unusual amount of swelling in her shoulder. Id. Surgery was discussed and requested, but not approved by the insurance carrier. Id. Despite this fact, Dr. Richard Greenfield performed an arthroscopic shoulder surgery on Plaintiff on August 26, 2008 (AR 317;572;609). Plaintiff continued seeing Dr. Greenfield post-operatively and eventually requested acupuncture to which Dr. Greenfield agreed (AR 572).

In November 2008, Plaintiff started acupuncture treatment two days per week for two to four weeks. Id. Plaintiff returned to work in January 2009, but claims she was still in pain. Id. In May 2009, she was laid off from her job at Atlas Hotel and began working at Massage Envy. Id. After resuming her regular hours, in June 2009, Plaintiff claimed she began having numbness and tingling in her hands (AR 46-49).

Plaintiff continued seeing Dr. Greenfield, but she was also examined by Dr. James R. McClurg on June 29, 2009 (AR 48, 570).  Dr. McClurg diagnosed Plaintiff with right-sided impingement syndrome, cervical radiculopathy, cervical degenerative disc diseases, cubital tunnel syndrome, and carpal tunnel syndrome (AR 583). This time period is also relevant because on Plaintiff's initial application for disability insurance benefits she claimed a disability onset date of June 30, 2009 (AR 161).  On July 6, 2009, at the instruction of Dr. McClurg, Plaintiff had an updated MRI of her right shoulder, a cervical spine MRI, and nerve condition studies to the right upper extremity (AR 583). The MRI of her right shoulder showed minor evidence of tendinosis of the rotator cuff, but no evidence of a cuff tear or impingement (AR 494). The MRI of her cervical spine showed degenerative disc disease at C5-6 without stenosis or compromise of the central canal or foramina, and at C6-7 with only slight narrowing of the foraminal entrance, no compromise of central canal contents, and no obvious root compromise (AR 492).

In December 2009, Dr. Charles K. Jablecki performed electrodiagnostic studies that resulted in an abnormal study and findings compatible with chronic right C8-T1 root pathology (AR 25; 300-303). There was also presence of a left long thoracic neuropathy demonstrated on a brief neurological exam (AR 25).

14CV0585

Plaintiff continued to visit Dr. Greenfield in 2010 (AR 295-299, 304-307). In a progress report dated May 20, 2010, Dr. Greenfield indicated that Plaintiff's right arm and hand were better (AR 25, 304).  Dr. Greenfield noted that Dr. McClurg said Plaintiff was permanent and stationary from a report dated April 12, 2010 (AR 25, 304). In the report, he also said she was seeing a physical therapist which had helped her neck/back and trapezius[4/] a lot (AR 25, 304).

In April 2010, Lawrence G. Lyons, Ph.D., performed a psychological evaluation of Plaintiff (AR 242-243). He noted that Plaintiff sat down easily during the evaluation and exhibited no real physical discomfort, she had fine motor skills, and did not seem to experience mental or physical fatigue (AR 250). Plaintiff's  mood was sad but her speech and language usage were appropriate; she was oriented without signs of confusion; she had no memory problems; her thought processes were goal-directed, logical, and sequential; and her intellectual function appeared to be high average to above average (AR 250). Dr. Lyons diagnosed Plaintiff with major depression, single episode; sleep disorder due to a medical condition; and pain disorder; with a Global Assessment of Functioning (GAF) score of 56[5/] (AR 263). Dr. Lyons opined that Plaintiff's primary psychiatric disorder had been caused by the limitation and pain associated with her various physical problems related to her occupational injury; and the mood  disorder  represented the primary psychiatric condition that caused her to

---

[4/] A broad, flat muscle on each side of the upper and back part of the neck, shoulders, and back, the action of which raises, or rotates, or draws back the shoulders, and pulls the head backward or to one side. OXFORD ENGLISH DICTIONARY ONLINE, Trapezium (Mar. 2015).

[5/] A GAF score of 51-60 indicates moderate symptoms or difficulty in social, occupational or school functioning. Am. Psychiatric Ass'n, Diagnostic & Stat. Manual of Mental Disorders, Text Revision at 32 (2000). A GAF score is not synonymous with disability nor is it equivalent to an RFC finding. See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) (GAF score may assist an ALJ in formulating a claimant's RFC, but is not essential).

14CV0585

become psychologically distressed  (AR 264). He recommended therapy and did not think a psychiatric referral for medication was necessary (AR 270).

On August 17, 2010, Plaintiff was referred by Dr. Greenfield to Dr. Richard Ostrup for a neurosurgical worker's compensation evaluation of her right arm pain (AR 25; 480-484). Dr. Ostrup opined that he was not convinced Plaintiff had significant left-sided discomfort (AR 25; 481). He did not observe any symptoms from abduction or elevation of Plaintiff's right arm, any definite tenderness over the cubital tunnels bilaterally, or any positive Phalen's or Tinel's sign (carpal tunnel) at the wrist (AR 25; 482). Evaluation of her Guyon's canal did not demonstrate any definite pathology, there was no atrophy or weakness in her motor function, her reflexes were symmetrical, and her senses were intact. Id. Dr. Ostrup observed that Plaintiff's imaging studies to date did not reveal any compression over the right C8 or T1 nerve roots. Id. He also did not find an ulnar nerve entrapment at her elbows or wrists. Id. Dr. Ostrup was unable to provide  a specific diagnosis as to the etiology for Plaintiff's ongoing arm symptoms (AR 25).

On November 30, 2010, Dr. Ostrup reviewed Plaintiff's CT-myelogram and noted it did not show any specific problems in the C8 region or ulnar nerve (AR 485). It showed a stable, slight degenerative posterolisthesis of C5 and C6, but otherwise normal alignment (AR 489). There were minimal or mild posterior disc bulging at C5-C6 and C6-C7, as well as some minimal or mild foraminal narrowing, and mild facet joint hypertrophy (AR 489-490). However, the discs at the other levels of the cervical and upper thoracic spine were normal (AR 489-490).

On January 28, 2011, Plaintiff submitted a Function Report to the SSA (AR 196-203). She indicated her daily activities included sewing, checking out videos from the library, taking walks, and keeping up with her exercises (AR 196). She stated she often took a nap during the day, and would try to meditate and write a couple of pages. Id. She stated her shoulder sometimes hurt when buttoning clothes, putting on makeup, or putting up her hair, but she took care of her own personal needs and grooming (AR

14CV0585

197-198). She said she could prepare her own meals and do light housework and laundry, but she needed breaks when doing strenuous chores like cleaning the tub or floors (AR 198). Plaintiff went out on her own for cigarettes, groceries, and laundry, met up with friends a couple of times a week, talked on the phone every other day, and walked or took public transportation (AR 199-200). She claimed that she struggled with lifting, bending, standing, reaching, sitting, completing tasks, concentrating, using her hands, and getting along with others, and claimed she had memory problems (AR 201).

Plaintiff's friend, Tate Baker, also submitted a Function Report to the SSA on January 28, 2011 (AR 187-194). Mr. Baker thought Plaintiff had difficulties with small movements, lifting objects, and sleeping (AR 188). He said Plaintiff prepared her own meals, did light housework and laundry, went shopping, walked or used public transportation to get around, went to medical appointments, socialized with friends, and spent time reading, watching videos, and listening to the radio (AR 187-191). Mr. Baker asserted Plaintiff seemed depressed and had difficulty lifting, standing, reaching, talking, completing tasks, concentrating, and using her hands, along with memory problems (AR 192).

On January 31, 2011, Plaintiff underwent an MRI of her right brachial plexus (AR 26, 374). The results revealed the right brachial plexus was within normal limits, with no evidence of a mass, injury, or cervical spine abnormalities (AR 26, 374).

In February 2011, Plaintiff was examined by State agency physician, Dr. Ormsby (AR 340). Dr. Ormsby opined that Plaintiff had a medium RFC with right overhead manipulative limitations. Id.

In March 2011, consultative examiner Douglas R. Dolnak, D.O. performed a psychiatric evaluation on Plaintiff (AR 349-354). Plaintiff reported she was not taking any medication for depression and she was not in psychotherapy, nor had she had any psychiatric hospitalizations or treatment (AR 27, 350). Dr. Dolnak observed Plaintiff was in no acute distress, could walk without a cane or walker, and was pleasant and cooperative although her mood was dysphoric and mildly anxious (AR 352). Plaintiff's

14CV0585

thought content and processes were clear and goal directed, and she was alert and oriented to person, place and time. Id. Plaintiff had mild to moderate difficulty with memory, attention and concentration, but her insight and judgment were intact (AR 27, 352-353). Dr. Dolnak diagnosed Plaintiff with a major depressive disorder, single episode, current episode mild severity; he assigned a GAF score of 60[6/] (AR 27, 353). Dr. Dolnak stated Plaintiff was able to understand, remember, and carry out simple one or two-step job instructions (AR 353). He opined that she would have mild difficulty with detailed and complex instructions secondary to mild difficulty with the ability to maintain attention and concentration; she would be able to associate with day-to-day work activity, including attendance and safety; would be able to accept instructions from supervisors and perform work activities without special supervision; and could maintain regular attendance at work and complete a normal workday routine (AR 354).

On April 11, 2011, Dr. Jerome C. Hall performed an orthopedic evaluation on Plaintiff (AR 378-391). His cervical spine examination revealed some tenderness but otherwise normal or negative findings, including normal range of motion (AR 385-387). Plaintiff also had normal motor strength and normal sensation in all upper and lower extremities, full range of motion in both shoulders, a negative Tinel's test for both wrists and elbows, and a negative Phalen's test for both wrists (AR 386-388). Dr. Hall opined that Plaintiff should avoid repetitive pushing and pulling of her upper extremities, avoid repetitive overhead work, and lift no more than 20 pounds (AR 371, 389). He did not think Plaintiff required further orthopedic treatment and recommended psychiatric or pain management treatment (AR 389).

On June 30, 2011, Plaintiff saw Dr. Blake Thompson for an evaluation (AR 26, 543). Dr. Thompson noted that Plaintiff was not taking any medications, she had a normal gait, was able to perform heel and toe walking, had normal alignment and

---

[6/] A GAF score of 60 is at the upper end of the range indicating moderate symptoms. Am. Psychiatric Ass'n, Diagnostic & Stat. Manual of Mental Disorders, Text Revision at 32 (2000).

posture, had a normal arm swing, and was able to perform a full squat (AR 26, 546). The examination revealed tenderness in her right trapezius, minor limits in her cervical spine range of motion in her shoulders, wrists, and hands (AR 547-548). Dr. Thompson diagnosed Plaintiff with chronic pain syndrome, cervicobrachial myofascial pain syndrome, bilateral upper extremity overuse tendonitis, and status post motor vehicle accident with status post gallbladder resection and partial liver resection (AR 26, 548). He recommended Plaintiff start with medication therapy including a trial of Cymbalta, and other modalities including a good diet, exercise, and good sleep as well as a course in physical therapy and cognitive behavioral therapy (AR 26, 550).

In a report dated February 7, 2012, Dr. Jablecki again performed electrodiagnostic studies on Plaintiff which resulted in abnormal findings (AR 26, 538-539). Dr. Jablecki also noted neuromyopathy in Plaintiff's left and right serratus, median nerve pathology in her right wrist, normal ulnar sensory conduction studies and normal medial antebrachial cutaneous studies (AR 538-542). Dr. Jablecki did not assess any specific functional limitations related to these findings (AR 26).

On October 2, 2012, Dr. Khalid B. Ahmed submitted a letter to the Department of Social Security (AR 624). In the letter Dr. Ahmed claimed he had been treating Plaintiff in his office since February 9, 2010. Id. He asserted that Plaintiff experienced headaches and neck pain that were worsened with activity and repeated use of her arms (AR 624-625). He also claimed Plaintiff had lower back pain radiating to both legs (AR 625). Dr. Ahmed stated that he prescribed Norco, Anaprox and Flexeril. Id. He opined Plaintiff could not stand or walk more than one hour or work eight hours on a sustained basis. Id. He asserted that Plaintiff should avoid wetness, noise, fumes, gasses, temperature extremes, humidity, and dust. Id. Dr. Ahmed further asserted Plaintiff was precluded from repetitive pushing, pulling, gripping, grasping, and heavy lifting and was unable to keep her neck in a constant position. Id. He also opined that Plaintiff's pain increased with repeated bending, kneeling, stooping, lifting, and standing, sitting, or walking for more than 30 minutes. Id. Finally, Dr. Ahmed thought that Plaintiff's

pain and fatigue interfered with her attention and concentration, and she would likely be absent from work more than three times a month. Id.

### B. SUMMARY OF RELEVANT TESTIMONY AT THE ALJ HEARING

At the hearing on October 11, 2012, medical expert, Dr. Arthur Brovender, testified to his thorough review of the medical records and Plaintiff's testimony (AR 27). Dr. Brovender stated that Plaintiff's impairments were severe, but did not meet or equal any criteria of an impairment as set forth in 20 C.F.R., Part 404, Subpart P, Appendix 1, Part A. Based on the evidence of record, Dr. Brovender testified that MRI studies of the Plaintiff's right shoulder showed mild tendinosis. Id. He also testified that Plaintiff's cervical spine showed degenerative disc disease with uncovertebral spondylosis, facet joint hypertrophy and mild neural foraminal narrowing. Id. He stated EMG studies showed abnormal findings at C8-T1, bilateral carpal tunnel syndrome, and cubital tunnel syndrome. Id. Dr. Brovender opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, sit for six hours in an eight-hour workday and stand/walk for six hours in and eight-hour work day. Id. He stated she could balance, stoop, kneel, and crouch occasionally; she could climb ramps/stairs frequently, but she could not crawl or climb ladders, ropes, or scaffolds; and she could occasionally reach overhead with her right upper extremity and occasionally handle bilaterally. Id.

A vocational expert ("VE"), Connie Guillory, also testified at the hearing on October 11, 2012 (AR 29). Ms. Guillory testified that Plaintiff had past relevant work as a masseuse (Dictionary of Occupational Titles (DOT) No. 334.374-010) which is semi-skilled, medium level work activity; and as a retail sales clerk (DOT No. 290.447-014) which is semi-skilled, light-level work activity. Id. She stated Plaintiff had a current residual functional capacity for unskilled light level work activity, and therefore Plaintiff was unable to perform past relevant work. Id. The ALJ presented Ms. Guillory with a hypothetical question regarding an individual able to perform light unskilled work with the following limitations: able to sit, stand or walk for 6 hours in an 8 hour day; unable to crawl or climb ladders, ropes or scaffolding; able to reach overhead and

to perform fingering and handling occasionally; and able to understand, remember and perform simple instructions (AR 68). Ms. Guillory opined that although the individual would be incapable of performing Plaintiff's past relevant work, the individual would be able to perform the requirements of representative occupations such as information clerk, usher, and recreation aid (AR 69).

On November 9, 2012, based on the determinations of the SSA consultants, the opinions of consultative examiners, the testimony of medical expert Dr. Brovender, the testimony of vocational expert, Ms. Guillory, and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff was not entitled to disability benefits (AR 29-30). The ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. Id.

## V. **ALJ'S FINDINGS**

In his findings the ALJ summarized the medical records from all physicians Plaintiff had consulted and the ALJ noted the following:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> In terms of the claimant's alleged impairments, the evidence establishes that the claimant's symptoms are not of such frequency or severity as to interfere significantly with her ability to work. The records also show that the claimant continues to be able to walk and move in a satisfactory manner. The record shows no significant muscle weakness or any indication of loss of control or muscle wasting in the arms and legs due to any nerve damage and there is no evidence to suggest that the claimant has limitations that would preclude all work activity. Although the claimant alleges mental impairment, the objective medical evidence of record shows that she is able to think and communicate and act in her own best interest. Moreover, the claimant's routine activities establish a level of functioning greater than that alleged. Dr. Dolnak indicated that the

16

claimant lives alone in an apartment and routinely attends to her own personal hygiene care without assistance. She can prepare meals for herself and she indicated that she walks and utilizes public transportation to get around. The claimant reported that her relationship with friends and family is adequate and she can go outside by herself. She can independently handle cash appropriately. Dr. Dolnak opined that the claimant was able to understand, remember, and carry out simple one and two-step job instructions with some mild difficulty in the ability to maintain concentration and attention.  The claimant had no difficulty in most areas of functioning (Exhibit 6F). State Agency consultants determined that the medical evidence shows that although the claimant's condition results in some limitations, the claimant remains capable of performing full time work activity on a sustained basis. Moreover, the claimant told Dr. Dolnak that she stopped working because of her shoulder injury, and she testified that she was laid off. These inconsistencies in the claimant's reporting impeach credibility. Consequently, the undersigned finds that the claimant's allegations of disabling pain and limitation are inconsistent with the evidence of record and are, therefore, not fully credible.

As for opinion evidence, the assessment by Dr. Khalid B. Ahmed, M.D., is given little weight as it is inconsistent with the evidence of record and inconsistent with the claimant's own testimony (Exhibit 18F). Dr. Ahmed indicated such an extreme level of pain that it limited the claimant's functioning, however, the claimant takes only herbal remedies for pain. Medications that have been prescribed include Norco, Anaprox, and Flexeril, but the claimant testified that she does not take them due to concern that it would be harmful to the liver. Although claimant reported that she was in "too much pain" to return to work, she testified that she does not take any prescribed medications and relies wholly on alternative medications. She indicated that she takes turmeric as an anti-inflammatory and she also uses raspberry weed for fibroid-related cramps. She testified that she uses cayenne pepper, vinegar and molasses. Records from Dr. Greenfield show that the claimant "doesn't want to try Celebrex" (Exhibit 2F). The extreme limitations set forth by Dr. Ahmed are not supported by the evidence of record nor are they consistent with claimant's own reporting at the hearing in this matter.

(AR 28).

## VI. <u>STANDARD OF REVIEW</u>

A District Court may only disturb the Commissioner's final decision "if it is based on legal error or if the fact findings are not supported by substantial evidence ." <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229 (9th Cir. 1987); <u>accord</u> <u>Villa v.Heckler</u>, 797 F.2d 794, 796 (9th Cir. 1986). The Court cannot affirm the Commissioner's final decision simply by isolating a certain amount of supporting evidence. <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1200 (9th Cir. 1990). Rather, the Court must examine the administrative record as a whole. <u>Id.</u> Yet, the Commissioner's findings are not subject to reversal because substantial evidence exists in the record to support a different conclusion. <u>See</u>, <u>e.g.</u>, <u>Mullen v. Brown</u>, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Matthews v. Shalala</u>, 10 F.3d 678, 679 (9th Cir. 1993). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005); <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir.1995). The Commissioner's decision must be set aside, even if supported by substantial evidence, if improper legal standards were applied in reaching that decision. <u>See</u>, <u>e.g.</u>, <u>Benitez v. Califano</u>, 573 F.2d 653, 655 (9th Cir. 1978).

## VII. <u>DISCUSSION</u>

Plaintiff's Motion for Summary Judgment raises the issue of whether the ALJ erred in finding her testimony not entirely credible. (Doc. No. 14-1 at 3).

### A. <u>THE ALJ'S CREDIBILITY DETERMINATION IS SUPPORTED BY THE EVIDENCE</u>

Plaintiff alleges the ALJ failed to provide legally sufficient reasons to reject her testimony. (Doc. No. 14-1 at 3.) She alleges the ALJ's contention that her testimony is inconsistent with the objective medical evidence is not legally sufficient to find her not credible. (Doc. No. 14-1 at 7.) Plaintiff claims the ALJ failed to

14CV0585

articulate any clear and convincing reasons for rejecting her testimony about her subjective symptoms. (Doc No. 14-1 at 4.)

Defendant argues that Plaintiff's claims are without merit because the ALJ provided specific and valid bases for discounting the credibility of Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms, and his reasons are supported by substantial evidence in the record. (Doc No. 16 at 11.)

## 1. **APPLICABLE LAW**

Congress expressly prohibits granting disability benefits based on subjective complaints. 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 404.1529(a) (An ALJ will consider claimant's statements about pain or other symptoms but they will not alone establish disability.) An ALJ cannot be required to believe every allegation of disability, or else disability benefits would be available for the taking, which would be contrary to the Act. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

An ALJ must perform a two step analysis when deciding whether to accept a plaintiff's subjective symptom testimony. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir.1996). First, the ALJ determines if there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991). Second, the ALJ evaluates the intensity, persistence, and limiting effects of the reported symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work. 20 C.F.R. § 416.929(c). To reject a claimant's testimony when a medical impairment has been established and there is no evidence of malingering, the ALJ must give specific, clear and convincing reasons for doing so. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). An ALJ's credibility finding must be properly supported by the record and be sufficiently specific to ensure that he did not "arbitrarily discredit" a plaintiff's

1   subjective testimony.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002);

2   Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991).

3          In making a credibility determination, an ALJ may consider a variety of

4   credibility factors, including ordinary techniques of credibility evaluation, such as the

5   claimant's reputation for lying, prior inconsistent statements concerning the symptoms,

6   and other testimony by the claimant that appears less than candid; the claimant's daily

7   activities; nature, location, onset, duration, frequency, radiation, and intensity of pain

8   or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness,

9   and adverse side-effects of any medication; treatment, other than medication; functional

10  restrictions; and unexplained, or inadequately explained, failure to seek treatment or to

11  follow a prescribed course of treatment.  Bunnell, 947 F.2d at 346-47; Smolen  v.

12  Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495 F.3d 625, 637-39

13  (9th Cir. 2007).  If the ALJ's finding is supported by substantial evidence, it is not the

14  court's role to second guess it.  Thomas, 278 F.3d at 959; Rollins v. Massanari, 261

15  F.3d 853, 857 (9th Cir. 2001).

16                    **2. ARGUMENTS**

17         Plaintiff claims the ALJ did not properly conduct the mandated second step

18  of the two-step analysis for subjective symptoms. (Doc. No. 14-1 at 4). She argues the

19  ALJ failed to articulate any rationale sufficient to demonstrate that her testimony

20  regarding her subjective symptoms was not credible. (Doc. No. 14-1 at 8). Specifically,

21  Plaintiff argues that a finding that her testimony was not credible was not warranted,

22  although her testimony was inconsistent with objective medical evidence. (Doc. No. 14-

23  1 at 7).

24         Defendant argues the ALJ correctly found Plaintiff was not entirely credible

25  since her allegations of disabling symptoms were inconsistent with the evidence in the

26  record, including medical evidence, Plaintiff's own statements, and evidence

27  concerning her daily activities. (Doc. No. 16 at 13). Defendant contends that Plaintiff's

28

14CV0585

claim that she was unable to perform any work due to her alleged pain and dysfunction is contrary to the great weight of the medical evidence. Id.

### 3. COURT'S RULING

When evaluating a plaintiff's claim of subjective symptom testimony, unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir.1995) (internal quotation marks omitted); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater 157 F.3d 715, 722 (9th Cir.1998) (quoting Lester, 81 F3d. at 834).

Here, the ALJ properly considered and found not credible, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms, and the extent to which those symptoms limited her ability to work (AR 28). The ALJ found that Plaintiff had the following severe impairments: impingement syndrome, right-sided; degenerative joint disease of the cervical spine with radiculopathy; bilateral carpal tunnel syndrome; bilateral cubital syndrome; and depression (AR 22). The ALJ did not find that these impairments could not have reasonably caused some degree of Plaintiff's symptoms, nor did the ALJ make a finding of malingering. Therefore, the ALJ was required to provide "clear and convincing reasons" for rejecting Plaintiff's testimony. See Reddick, 157 F.3d at 722.

"To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.1996). Here, the ALJ found the evidence

before him established that Plaintiff's symptoms were not of such frequency or severity as to interfere significantly with her ability to work (AR 28). In his findings the ALJ noted that the record showed no significant muscle weakness or any indication of loss of control or nerve damage. Id. Despite Plaintiff's complaints of right arm pain, during his examination of Plaintiff, Dr. Ostrup observed no specific symptoms when Plaintiff elevated her right arm (AR 25, 482). Dr. Ostrup noted Plaintiff did not demonstrate any atrophy or weakness in her motor function, her imaging studies did not show any compression over the right C8 or T1 nerve roots, and there were no objective findings to identify an ulnar nerve entrapment at her elbow or wrist (AR 25).

Dr. Thompson's examination findings similarly cast doubt on Plaintiff's claim of disabling pain. The ALJ noted that, despite Plaintiff's complaints of pain, Dr. Thompson's examination revealed Plaintiff had a normal gait, she could sit comfortably, get on and off the examination table, perform a full squat, swing her arms, and maintain normal posture (AR 26, 546). Plaintiff had a full range of motion in her shoulders, wrists and hands, minor limits in her cervical spine range of motion, and normal strength, sensation, and reflexes in her arms (AR 547-548). Dr. Thompson recommended medication, physical therapy, cognitive behavioral therapy, and better nutrition, exercise and sleep (AR 26, 549-550). However, the ALJ determined that there was no evidence that Plaintiff followed Dr. Thompson's recommendations, a factor that may be considered when evaluating Plaintiff's credibility (see, e.g., AR 52 (Plaintiff testified that she took no pain medications)). See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.1996).

With respect to Plaintiff's alleged mental impairments, the ALJ found that the objective medical evidence of record showed she was able to think, communicate, and act in her own best interest (AR 28), and that Plaintiff's routine activities established a level of functioning greater than she alleged. Id. In reaching this conclusion, the ALJ looked to the opinion of Dr. Dolnak, who performed a comprehensive psychiatric evaluation of Plaintiff (AR 28-29, 349). Dr. Dolnak indicated that Plaintiff lived alone

and routinely attended to her own personal care and hygiene without assistance (AR 28). She was able to prepare meals for herself, walk or take the bus to get around, maintain relationships with family and friends, handle funds appropriately, and go out by herself (AR 23,28, 351). Additionally, Plaintiff's own Function Report, which she personally filled out and submitted to the agency, confirmed Dr. Dolnak's aforementioned findings (AR 196- 203). Dr. Dolnak further opined that Plaintiff had no limitations in most areas of functioning (AR 27, 28).

Further, Drs. Dolnak and Lyons both noted that Plaintiff had no history of psychiatric hospitalization, did not take medication for depression, and did not participate in counseling or psychotherapy (AR 27, 248, 350). Dr. Lyons also thought a referral to a psychiatrist for medication was unnecessary since "talk therapy" would be sufficient (AR 270). Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir.2007) ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment") citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)) (see also Molina, 674 F.3d at 1113-14 (in discounting claimant's credibility, ALJ properly considered the claimant's failure to follow clinician's advice that she seek counseling).

The ALJ noted that, while Drs. Dolnak and Lyons acknowledged Plaintiff was sad and anxious, they also agreed that her thought processes and content were normal, she was alert and oriented, she volunteered information and was cooperative, and she had no problems with her insight, judgment, and associations (AR 249-250, 352-353). Dr. Lyons also asserted that Plaintiff's intellect was "above average" (AR 250). While both doctors thought Plaintiff had difficulties with attention and concentration, and Dr. Dolnak opined that Plaintiff had mild difficulty with detailed, complex instructions (AR 270, 354), the RFC addressed these issues by limiting Plaintiff to jobs with simple instructions (AR 24). Plaintiff's psychological evaluations and her daily activities therefore provided sufficient evidence to support the ALJ's finding that Plaintiff was not disabled by depression since she could "think, communicate and act in her own

interest," get along with others, perform ordinary daily activities, and follow basic instructions (AR 23).

Moreover, the ALJ did not rely solely on the medical evidence of record in finding Plaintiff's testimony not credible. The ALJ gave little weight to Plaintiff's allegations of debilitation in her January 28, 2011, adult function report. Additionally, the ALJ explained, "the claimant told Dr. Dolnak that she stopped working because of her shoulder injury, and she testified that she was laid off. These inconsistencies in the claimant's reporting impeach her credibility" (AR 28).

In this case, the ALJ articulated clear and convincing reasons for rejecting Plaintiff's pain testimony. The ALJ properly considered Plaintiff's activities of daily living in his credibility analysis. "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir.2005) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989); see also Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir.1999) ("[C]laimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work.")

By Plaintiff's own account, she routinely engaged in activities that courts have held constituted evidence of a claimant's ability to work, such as handling her own personal needs, preparing meals, walking and taking public transportation, going out by herself, visiting with friends, handling cash, shopping for groceries, reading, doing housework, and going to appointments (see AR 23, 28-29; see also AR 196-200). See, e.g., Mayes v. Massanari, 276 F.3d 453, 457, 461 (9th Cir. 2001) (claimant's "testimony that she could do many daily activities," including watch television, straighten up her house, shop and do laundry (with help), paint by numbers, work on puzzles, listen to music, try to exercise, and sometimes go to lunch and dinner with her boyfriend, "suggested that she could also work"). Plaintiff's adult function report, coupled with her own statements and other evidence of her everyday activities,

14CV0585

1   showed she could engage in a greater level of activity than her subjective complaints

2   suggested (AR 23, 28-29; see AR187-191, 196-200). See 20 C.F.R. § 404.1529(c)(3)(i)

3   (daily activities are among factors that an ALJ may consider in evaluating severity of

4   claimed impairments).

5   The ALJ also considered Plaintiff's friend's third party adult functioning

6   report of January 28, 2011. An ALJ may consider third party statements as evidence

7   regarding the severity of Plaintiff's impairment. See 20 C.F.R. § 416.913. "If the ALJ

8   wishes to discount the testimony of the lay witnesses, he must give reasons that are

9   germane to each witness." Dodrill v. Shalala, 12 F.3d 9915, 919 (9th Cir.1993); Bruce

10   v. Astrue, 557 F.3d 1113, (9th Cir.2009).   Here, the ALJ considered the third party

11   adult function report from Tate Baker (Plaintiff's friend) and noted his report was

12   consistent with the Plaintiff's report (AR 29). The ALJ stated that Mr. Baker did not

13   provide any observations to  establish any impairment or to refute the opinions of the

14   State Agency consultants or consultative examiners in this matter (AR 29). Where the

15   ALJ has first found a claimant not credible, the ALJ may subsequently reject lay

16   testimony because it essentially reproduces the claimant's testimony. Valentine v.

17   Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009). Mr. Baker reported that

18   Plaintiff "does light housework and laundry...walks and uses public transportation to

19   travel and she is able to shop for groceries and toiletries" (AR 29).  Thus, Mr. Baker's

20   testimony essentially reproduces Plaintiff's testimony. These reasons are sufficiently

21   germane for the ALJ not to credit Mr. Baker's opinion evidence.

22   In conclusion, the ALJ reasonably determined that Plaintiff's statements

23   regarding the intensity, persistence, and limiting effects of her symptoms were not

24   entirely credible. The ALJ supported this finding by pointing to specific, clear and

25   convincing evidence in the record that contradicted Plaintiff's testimony. Given the

26   aforementioned discussion, the Court finds that the ALJ properly rejected Plaintiff's

27   testimony.

28

14CV0585

1

## VIII. <u>CONCLUSION</u>

2   For the reasons set forth herein, it is recommended that Plaintiff's Motion for

3 Summary Judgment be DENIED.  Further, this Court RECOMMENDS that Defen-

4 dant's Cross-Motion for Summary Judgment be GRANTED.  This Report and

5 Recommendation will be submitted to the United States District Judge assigned to this

6 case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(1988) and Federal Rule of

7 Civil Procedure 72(b).

8   IT IS ORDERED that no later than **May 11, 2015**, any party to this action may

9 file written objections with the Court and serve a copy on all parties.  The document

10 shall be captioned "Objections to Report and Recommendation."

11   IT IS FURTHER ORDERED that any reply to the objections shall be filed

12 with the Court and served on all parties no later than **May 26, 2015**. The parties are

13 advised that failure to file objections within the specified time may waive the right to

14 raise those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153

15 (9th Cir. 1991).

16 IT IS SO ORDERED.

17 DATED:  April 10, 2015

18

19

20  Hon. William V. Gallo
  U.S. Magistrate Judge

21

22

23

24

25

26

27

28

14CV0585